UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
BBY SOLUTIONS, INC. AND BEST
BUY STORES, L.P.,

                        Plaintiffs,                        <u>REPORT AND</u>
                                                              <u>RECOMMENDATION</u>
   -against-
                                                               CV 11-0947 (ADS) (ETB)

ADAM P. SCHWARTZ,

                        Defendant.
----------------------------------------------------------------------x

TO THE HONORABLE ARTHUR D. SPATT, United States District Judge:

        Plaintiffs, BBY Solutions, Inc. ("BBY") and Best Buy Stores, L.P. ("Best Buy"), commenced this action on February 25, 2011, alleging that the defendant, Adam P. Schwartz ("Schwartz"), engaged in a pattern of fraudulent activity designed to confuse consumers and to steal Best Buy's proprietary intellectual property. Plaintiffs assert various federal infringement causes of action pursuant to the Trademark Act of 1946, 15 U.S.C. §§ 1051 <u>et</u> <u>seq.</u> (the "Lanham Act"), and the Copyright Act, 17 U.S.C. §§ 501 <u>et</u> <u>seq.</u>, as well as state law claims under the New York General Business Law and New York common law. Before the Court is the plaintiffs' motion for a default judgment, requesting permanent injunctive relief, as well as attorney's fees and costs. There has been no opposition to the motion received from the defendant. For the following reasons, I recommend that plaintiffs' motion for a default judgment be granted and that plaintiffs be awarded a permanent injunction, as well as attorney's fees and costs in the amount of $19,801.62.

FACTS

BBY is a Minnesota corporation that owns all right and title to Best Buy's intellectual property, including all federally registered and common law marks consisting of or incorporating the term GEEK SQUAD (the "GEEK SQUAD® Marks"). (Compl. ¶ 1.) Since at least 1994, Best Buy has used the GEEK SQUAD® Marks in connection with its advertising, promotion and the sale of its goods and services, including its computer repair and support services. (Id. ¶ 9.) Best Buy's GEEK SQUAD® Marks have been registered with the United States Patent and Trademark Office. (Id. ¶¶ 10-16.)

In connection with its computer repair services, Best Buy has developed proprietary software, known as the MRI Toolset, which it distributes only to its authorized service technicians or "agents." (Id. ¶ 23.) The MRI Toolset includes a computer software program known as the "MRI BDE," which is also a trade secret. (Id. ¶¶ 24, 27.) Best Buy registered its copyrights on its MRI works with the United States Copyright Office. (Id. ¶ 25.)

Beginning in approximately August 2010, the defendant, Schwartz, placed computer-repair advertisements on the internet using Best Buy's GEEK SQUAD® Marks. (Id. ¶ 31.) Schwartz described himself in his advertisements as a "former Geek Squad Agent" and offered computer repair services utilizing "the official Geek Squad cd that fixes and optimizes and applies tweaks" to home computers. (Id. ¶ 33.) In or about January 2011, Schwartz posed as a former Geek Squad agent and agreed to install the Geek Squad software onto a customer's computer for fifty dollars. (Id. ¶ 34.) As a result of Schwartz's conduct, consumers were misled into purchasing Schwartz's services under the mistaken belief that they were the same as or affiliated with those offered by Best Buy. (Id. ¶ 46.)

Plaintiffs commenced this action on February 25, 2011. The Complaint was personally served on Schwartz on March 23, 2011. (Larus Decl. in Supp. of Pl. Mot. for Default J. ("Larus Decl."), Ex. R.) Schwartz failed to answer or otherwise respond to the Complaint and the Clerk of the Court certified his default on June 7, 2011. On September 27, 2011, plaintiffs moved for a default judgment against Schwartz. Judge Spatt referred plaintiffs' motion to the undersigned to report and recommend as to whether plaintiffs' motion should be granted and whether the damages and injunctive relief requested should be awarded. (Order of Spatt, J., dated Oct. 3, 2011.)

The Court scheduled an inquest on damages for November 2, 2011. Plaintiffs' counsel appeared at that time. Schwartz did not appear. Prior to the inquest, the Court sua sponte raised the issue of statutory damages with plaintiffs' counsel, inquiring into whether plaintiffs had a sufficient basis for requesting such damages since they were not pleaded in the Complaint. The inquest was adjourned to allow plaintiffs' counsel time to respond to the Court's question. By letter dated November 4, 2011, plaintiffs' counsel advised the Court that plaintiffs were withdrawing their request for statutory damages and were instead solely seeking injunctive relief, attorney's fees and costs. (Letter from Parness, H. to Boyle, J. dated Nov. 4, 2011.)

DISCUSSION

I. Default Judgment

When a party fails to appear or defend an action by an adverse party, a default may be entered against the non-moving party. See Fed. R. Civ. P. 55. After entry of the default, "a defendant is deemed to have admitted all of the well-pleaded allegations raised in the complaint

pertaining to liability." Time Warner Cable of N.Y. v. Rivera, No. 99-2339, 1995 WL 362429, at *2 (E.D.N.Y. June 8, 1995); see also Time Warner Cable of N.Y. v. Barbosa, No. 98-3522, 2001 WL 118606, at *5 (S.D.N.Y. Jan. 2, 2001) (quoting Transworld Airlines, Inc. v. Hughes, 449 F.2d 51, 63 (2d Cir. 1971)). Plaintiffs are "entitled to all reasonable inferences from the evidence [they] offer[]." Cablevision Sys. New York City Corp. v. Lokshin, 980 F. Supp. 107, 112 (E.D.N.Y. 1997) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)).

Here, the evidence offered in support of plaintiffs' motion for a default judgment demonstrates that despite being personally served with the Complaint, Schwartz has failed to appear in this action in any way. The Clerk of the Court certified Schwartz's default in June 2011. Schwartz neither responded to plaintiffs' motion for a default judgment nor appeared at the inquest scheduled for November 2, 2011. Accordingly, I recommend that plaintiffs' motion for a default judgment be granted.

## II. Injunctive Relief and Damages

### A. Permanent Injunction

Plaintiffs request a permanent injunction to prevent any future infringement by Schwartz, pursuant to both the Copyright Act, 17 U.S.C. § 502(a), and the Lanham Act, 15 U.S.C. § 1116. "A court may issue an injunction on a motion for a default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction." Kingvision Pay-Per-View Ltd. v. Lalaleo, 429 F. Supp. 2d 506, 516 (E.D.N.Y. 2006) (citation and internal quotation marks omitted). The Copyright Act provides for the issuance of both "temporary and final injunctions

. . . to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). Similarly, the Lanham Act vests courts with the "power to grant injunctions . . . to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office . . . ." 15 U.S.C. § 1116(a). Accordingly, the first prong of the inquiry is satisfied.

With respect to the second prong, plaintiffs must demonstrate the following four prerequisites for the issuance of an injunction: "(1) that [they have] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff[s] and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

1. Irreparable Harm

In a trademark infringement case, such as this one, "a plaintiff can establish a risk of irreparable harm by showing a 'likelihood of confusion as to source or sponsorship.'" AW Indus., Inc. v. Sleepingwell Mattress Inc., No. 10-cv-4439, 2011 U.S. Dist. LEXIS 111889, at *30 (E.D.N.Y. Aug. 31, 2011), adopted by, 2011 U.S. Dist. LEXIS 106308 (E.D.N.Y. Sept. 21, 2011) (quoting Am. Cyanamid Co. v. Campagna Per Le Farmacie in Italia S.P.A., 847 F.2d 53, 55 (2d Cir. 1988)). "Plaintiff need only raise a serious question of likelihood of confusion." AW Indus., 2011 U.S. Dist. LEXIS 111889, at *30 (citation omitted).

Here, Schwartz's advertisements offered consumers computer repair services using plaintiffs' actual registered GEEK SQUAD® marks. Schwartz's advertisements also led consumers to believe that he was affiliated with plaintiffs' Geek Squad and would be performing repair services that were authorized by plaintiffs. Finally, Schwartz's advertisements stated that

he would be performing the computer repair services using plaintiffs' trademarked computer software. As a result of Schwartz's unlawful conduct, it is more than likely that consumers were confused as to whether Schwartz was affiliated with plaintiffs. Accordingly, plaintiffs have demonstrated irreparable harm.

        2.        <u>Inadequacy of Remedies at Law</u>

"In the absence of assurances in the record against a defendant's continued infringing activity, a remedy at law may be deemed insufficient to compensate a plaintiff for [its] injuries." <u>AW Indus.</u>, 2011 U.S. Dist. LEXIS 111889, at *32 (quoting <u>Eu Yan Sang Int'l Ltd. v. S&M Enters. (U.S.A.) Enter. Corp.</u>, No. 09-CV-4235, 2010 WL 3824129, at *4 (E.D.N.Y. Sept. 8, 2010), <u>adopted by</u>, 2010 U.S. Dist. LEXIS 99796 (E.D.N.Y. Sept. 23, 2010)); <u>see also</u> <u>Warner Bros. Entm't Inc. v. RDR Books</u>, 575 F. Supp. 2d 513, 553 (S.D.N.Y. 2008) (noting that money damages are insufficient where a defendant is likely to continue [its] infringing" activity). Here, defendant's refusal to appear in this action demonstrates the inadequacy of plaintiffs' remedies at law. <u>See</u> <u>AW Indus.</u>, 2011 U.S. Dist. LEXIS 11189, at *32. "No assurances have been made before this Court or to plaintiff that the infringing activity will cease, nor is it likely to cease without court intervention." <u>Id.</u> Accordingly, plaintiff has satisfied the second prerequisite for the issuance of a permanent injunction.

        3.        <u>Balance of Hardships</u>

Plaintiff has established both irreparable harm and that Schwartz's infringing conduct is likely to continue absent injunctive relief. Conversely, by his decision not to appear in this action, Schwartz has not offered any hardship for the Court to consider. Rather, Schwartz "has persisted in [his] unauthorized use of plaintiffs' [marks], and benefitted by that

unlawful use." Id. at *33. "The only hardship to [Schwartz] from this injunction would be to prevent him from engaging in further illegal activity." Dish Network L.L.C. v. Delvecchio, No. 11-CV-6297, 2011 U.S. Dist. LEXIS 116019, at *17 (W.D.N.Y. Oct. 7, 2011). Moreover, plaintiffs have "already incurred substantial legal costs in protecting [their] trademark rights, and as such the balance of hardships tips unquestionably in plaintiff[s'] favor." AW Indus., 2011 U.S. Dist. LEXIS 111889, at *33.

    4.  Public Interest

    Finally, the public interest will not be disserved by issuing plaintiffs' the permanent injunction they seek. "The trademark laws are intended, in part, to protect the public from confusion." Hermes Int'l v. Lederer De Paris Fifth Ave., Inc., 50 F. Supp. 2d 212, 225 (S.D.N.Y. 1999). "Clearly, it is in the public interest to avoid deceit and confusion in consumer transactions." AW Indus., 2011 U.S. Dist. LEXIS 111889, at *33 (citing Eu Yan Sang, 2010 WL 3824129, at *5). Similarly, the "object of copyright law is to promote the store of knowledge available to the public," Salinger v. Colting, 607 F.3d 68, 82 (2d Cir. 2010), and issuing an injunction here would "protect [plaintiffs'] copyrights and help enforce federal law." Dish Network, 2011 U.S. Dist. LEXIS 116019, at *17. Accordingly, plaintiffs have also satisfied the fourth prerequisite for the issuance of a permanent injunction.

Based on the foregoing, I recommend that plaintiffs be granted a permanent injunction to prevent Schwartz from engaging in any further infringing conduct. As requested in the Complaint, I recommend that the injunction be issued as follows:

    A.  Permanently enjoining Schwartz from using, in connection with his services or products, the GEEK SQUAD® Marks, or any confusingly similar variant thereof;

B.  Permanently enjoining Schwartz from further and continuing infringement of Best Buy's copyrights, including Best Buy's copyrights in the Best Buy MRI Works;

C.  Permanently enjoining Schwartz from further and continuing use or distribution of Best Buy's trade secrets, including Best Buy's trade secrets in the MRI Toolset;

D.  Permanently enjoining Schwartz from further and continuing interferences with Best Buy's contractual relations, including Best Buy's contracts relating to the MRI Toolset and Best Buy MRI Works; and,

E.  Permanently enjoining Schwartz from further and continuing false advertisements claiming an association or affiliation with Best Buy or the Geek Squad, including falsely holding himself out as a former Geek Squad agent or employee.

B.  Attorney's Fees and Costs

In addition to the injunctive relief discussed above, plaintiffs also seek their attorney's fees and costs incurred in the prosecution of this action. Plaintiffs request an award in the amount of $20,640.12, which represents $18,478.50 in attorney's fees and $2,161.62 in costs.

The Copyright Act provides for the recovery of attorney's fees and costs by the prevailing party. See 17 U.S.C. § 505; see also Kepner-Tregoe, Inc. v. Vroom, 186 F.3d 283, 289 (2d Cir. 1999). The Lanham Act also provides for the award of attorney's fees, but only "in exceptional cases." 15 U.S.C. § 1117(a). "The Second Circuit has explained that such awards are appropriate in instances of . . . 'willful infringement.'" AW Indus., 2011 U.S. Dist. LEXIS 111889, at *22 (quoting Patsy's Brand, Inc. v. I.O.B. Realty, Inc., 317 F.3d 209, 211 (2d Cir. 2003)) (additional citation omitted). "A defendant's default may be considered as evidence of willful infringement." Victoria Cruises, Inc. v. Changjiang Cruise Overseas Travel Co., 630 F. Supp. 2d 255, 261 (E.D.N.Y. 2008); see also Tiffany (NJ) Inc. v. Luban, 282 F. Supp. 2d 123,

124 (S.D.N.Y. 2003) ("By virtue of the default, [the defendants'] infringement is deemed willful."). Schwartz's default here, taken together with the facts set forth in plaintiffs' Complaint, which are deemed to be true, provide substantial evidence of willful trademark and copyright infringement. Accordingly, I recommend that plaintiffs be awarded reasonable attorney's fees and costs.

        1.      <u>Attorney's Fees</u>

In the Second Circuit, attorney's fees are determined by calculating the "presumptively reasonable fee," or the "lodestar" figure. <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany</u>, 493 F.3d 110, 117-18 (2d Cir. 2007), <u>amended on other grounds</u>, 522 F.3d 182 (2d Cir. 2008); <u>Baruch v. Healthcare Receivable Mgmt., Inc.</u>, No. 05-CV-5392, 2007 U.S. Dist. LEXIS 80429, at *15 (E.D.N.Y. Oct. 29, 2007). The court determines the presumptively reasonable fee by multiplying "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 453 (1983).

The burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed. <u>See id.</u> at 433; <u>Cho v. Koam Med. Servs. P.C.</u>, 524 F. Supp. 2d 202, 209 (E.D.N.Y. 2007) ("The party seeking the award bears 'the burden of documenting the hours reasonably spent by counsel . . . .'"). Accordingly, the party seeking an award of attorney's fees must support its application by providing contemporaneous time records that detail "for each attorney [and legal assistant], the date, the hours expended, and the nature of the work done." <u>New York State Ass'n for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1148 (2d Cir. 1983).

In determining what constitutes a "reasonable hourly rate," the court should look to the market rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998) (quoting Blum v. Stevenson, 465 U.S. 886, 896 n.11 (1984)). For purposes of determining the reasonable hourly rate, "[t]he relevant community to which the court should look is the district in which the case was brought." Marisol A. v. Guiliani, 111 F. Supp. 2d 381, 386 (S.D.N.Y. 2000) (citing In re Agent Orange Prod. Liab. Litig., 818 F.2d 226, 232 (2d Cir. 1987); see also Arbor Hill, 493 F.3d at 118 (stating that the "community" for purposes of calculating attorney's fees "is the district where the district court sits") (citation omitted). The Second Circuit clarified this rule in Simmons v. New York City Transit Authority, 575 F.3d 170 (2d Cir. 2009), wherein it held that when determining an award of attorney's fees, there is "a presumption in favor of application of the forum rule," id. at 175, such that courts "should generally use 'the hourly rates employed in the district in which the reviewing court sits' in calculating the presumptively reasonable fee." Id. at 174 (quoting Arbor Hill, 493 F.3d at 119).

The determination of what constitutes a reasonable hourly rate also "requires the submission of information 'concerning the credentials or experience of counsel applying for fees.'" Molefi v. Oppenheimer Trust, No. 03 CV 5631, 2007 U.S. Dist. LEXIS 10554, at *16 (E.D.N.Y. Feb. 15, 2007) (quoting Night Hawk Ltd. v. Briarpatch Ltd., L.P., No. 03 Civ. 1382, 2003 U.S. Dist. LEXIS 23179, at *4 (S.D.N.Y. Dec. 23, 2003)). Where such information is lacking, the court may reduce the award of attorney's fees accordingly. See Molefi, 2007 U.S. Dist. LEXIS 10554, at *16 (citation omitted); see also Marano v. Aaboe, No. 05 Civ. 9375, 2007 U.S. Dist. LEXIS 80154, at *9 (S.D.N.Y. Oct. 29, 2007) (reducing plaintiff's counsel's requested

hourly rate where counsel failed to "provide any details as to her skill, experience or reputation" in order to support the rate requested).

With respect to attorney's fees awarded in this district, "[a] review of recent cases . . . indicates that the range of appropriate billing rates is $200 - $375 per hour for partners and $100 - $295 per hour for associates." Melnick v. Press, No. 06-CV-6686, 2009 U.S. Dist. LEXIS 77609, at *32 (E.D.N.Y. Aug. 28, 2009) (collecting cases); see also Gutman v. Klein, No. 03 Civ. 1570, 2009 U.S. Dist. LEXIS 123057, at *8 (E.D.N.Y. Oct. 9, 2009) (approving rates of $300 to $400 for partners, $200 to $300 for senior associates, and $100 to $200 for junior associates); Duverger v. C&C Duplicators, Inc., No. 08-CV-0721, 2009 U.S. Dist. LEXIS 53859, at *7 (E.D.N.Y. June 25, 2009) (finding appropriate billing rates in this district to be $200 to $350 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates and $70 to $80 for legal assistants); Cruz v. Henry Modell & Co., No. CV 05-1450, 2008 U.S. Dist. LEXIS 25339, at *23 (E.D.N.Y. Mar. 31, 2008) ("Overall, hourly rates for attorneys approved in recent Eastern District of New York cases have ranged from $200 to $350 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates, and $70 to $80 for legal assistants.").

According to plaintiffs' counsel's declaration in support of their motion for a default judgment, plaintiffs seek fees for the following attorneys who expended time on behalf of plaintiffs: (1) Christopher Larus, a partner with twenty years of experience, whose billing rate during the course of this action ranged from $495 to $525 per hour; (2) Jamie Kurtz, a junior associate who only recently graduated law school and whose billing rate during the course of this action ranged from $150 to $215 per hour; and (3) Kelly McLain, a senior associate with a little

more than seven years of experience and whose billing rate during the course of this action ranged from $295 to $310 per hour. (Larus Decl. ¶¶ 8-10.) Plaintiffs submitted biographies of these three individuals, which detail their credentials. (Larus Decl, Ex. T.)

However, the billing records submitted by plaintiffs also include time expended by the following: (1) Hillel Parness, a partner, whose billing rate is $375 per hour; (2) "OD Langer," who, based on his/her billing rate of $500 per hour, appears to be a partner; (3) "LJ Lewis," for whom no description is provided, and whose billing rate is $250 per hour; (4) "S St. Hill," an associate, whose billing rate is $330 per hour; (5) "BK Chan," a paralegal, whose billing rate is $230 per hour; and (6) "JA Jadwin," an investigator, whose billing rate is $160 per hour. No biographical information has been provided for any of the foregoing individuals.

After reviewing the information provided as well as the relevant case law, I find that the hourly rates charged for Parness, Kurtz, McLain, and Jadwin are reasonable. However, the hourly rates charged for Larus and Langer (the latter is assumed to be a partner) exceed that which is considered to be reasonable for partners in this district. With respect to St. Hill, since no biographical information was provided, I have no way of knowing his/her level of seniority and therefore, am unable to determine if his hourly rate is reasonable. The same can be said with respect to Lewis, for whom not even a title was provided. Finally, I find the hourly rate of Chan, a paralegal who is billed out at $230 per hour, to be excessive, given that the approved hourly rates for paralegals in this district range from $70 to $80 per hour.

Based on the foregoing, I recommend that plaintiffs be awarded the requested hourly rates for Parness, Kurtz, McLain and Jadwin, as they are reasonable. With respect to the remaining timekeepers, I recommend that the following hourly rates be awarded: (1) $400 per hour for

Larus and Langer; (2) $300 per hour for St. Hill; and (3) $75 per hour for Lewis and Chan.

I have reviewed the billing records provided and find the number of hours expended on both the investigation and litigation of this action - 75.20 - to be reasonable. Accordingly, using the revised hourly rates discussed above, I recommend that plaintiffs be awarded $17,640.00 in attorney's fees.[1]

    2.    Costs

"Attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998) (citation omitted); see also Miltland Raleigh-Durham v. Meyers, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients.") (quoting Reichman v. Bonsignore, Brignati & Mazzotta, P.C., 818 F.2d 278, 283 (2d Cir. 1987)) (additional citation omitted).

The expenditures incurred in the within action include costs for legal research, overnight mail delivery, investigation-related fees, photocopies, court filing fees, messenger services, travel-related fees, and process server fees, all of which are routinely recoverable. See, e.g.,

---

[1] This number breaks down individually as follows: (1) Larus - 1.8 hours at $400 per hour for a total of $720.00; (2) Langer - 0.6 hours at $400 per hour for a total of $240.00; (3) Parness - 3.6 hours at $375 per hour for a total of $1,350.00; (4) St. Hill - 1.5 hours at $300 per hour for a total of $450.00; (5) McClain - 3.6 hours at $295 per hour and 20.5 hours at $310 per hour for a total of $7,417.00; (6) Kurtz - 14.4 hours at $150 per hour and 14.1 hours at $215 per hour for a total of $5,191.50; (7) Jadwin - 13.4 hours at $160 per hour for a total of $2,144.00; (8) Lewis - 0.2 hours at a rate of $75 per hour for a total of $15.00; and (9) Chan - 1.5 hours at a rate of $75 per hour for a total of $112.50.

Rosco, Inc. v. Mirror Lite Co., No. CV 96-5658, 2009 U.S. Dist. LEXIS 99407, at *8-10 (E.D.N.Y. Oct. 26, 2009) (finding expert fees to be recoverable); Simmons v. New York City Transit Auth., No. CV 02-1575, 2008 U.S. Dist. LEXIS 16949, at *22-23 (E.D.N.Y. Mar. 4, 2008), vacated and remanded on other grounds, 575 F.3d 170 (2d Cir. 2009) (finding costs relating to "filing fees, process servers, postage, travel and photocopying" to be recoverable); Cho, 524 F. Supp. 2d at 212 (reimbursing plaintiff for costs related to "Federal Express, reproduction, telephone, facsimile, postage, deposition services, [and] deposition/hearing transcripts" as well as legal research); Int'l Consulting Servs., Ltd. v. Cheap Tickets, Inc., No. 01-CV-4768, 2007 U.S. Dist. LEXIS 71689, at *26 (E.D.N.Y. Sept. 12, 2007) (finding costs related to electronic research reasonable and awarding costs requested); In re Merrill Lynch & Co. Research Reports Secs. Litig., No. 02 MDL 1484, 2007 U.S. Dist. LEXIS 9450, at *79 (S.D.N.Y. Jan. 31, 2007) (finding expenses for transportation to be reasonable and recoverable); Molefi, 2007 U.S. Dist. LEXIS 10554, at *25 (finding that "costs associated with mailings, photocopies, and court fees . . . are precisely the type of costs that may be included in an award of attorney's fees").

Accordingly, I recommend that plaintiffs be awarded costs in the amount requested of $2,161.62.

### RECOMMENDATION

For the foregoing reasons, I recommend that plaintiffs' motion for a default judgment be granted and that plaintiffs be awarded the following: (1) a permanent injunction preventing the defendant from engaging in any further infringing conduct, as set forth supra; (2) attorney's fees

in the amount of $17,640.00; and (3) costs in the amount of $2,161.62, for a total monetary award of $19,801.62.

<u>OBJECTIONS TO THIS REPORT AND RECOMMENDATION</u>

Any written objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further appellate review. <u>Thomas v. Arn</u>, 474 U.S. 140, 145 (1985); <u>IUE AFL-CIO Pension Fund v. Herrmann</u>, 9 F.3d 1049, 1054 (2d Cir. 1993); <u>Frank v. Johnson</u>, 968 F.2d 298, 299-300 (2d Cir. 1992).

**SO ORDERED:**

Dated: Central Islip, New York
November 17, 2011

/s/ E. Thomas Boyle
E. THOMAS BOYLE
United States Magistrate Judge